RECEIVED
IN MONROE, LA
OCT 16 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CLIFFORD PETTY | CIVIL ACTION NO. 05-1094 |
| VERSUS | JUDGE ROBERT G. JAMES |
| RETIREMENT PLAN OF INTERNATIONAL PAPER COMPANY AND INTERNATIONAL PAPER COMPANY GROUP HEALTH AND WELFARE PLAN, WEEKLY SICKNESS & ACCIDENT PLAN | MAG. JUDGE JAMES D. KIRK |

RULING

Plaintiff Clifford Petty ("Petty") brought this lawsuit pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., against the Retirement Plan of International Paper Company ("the Retirement Plan"), on the basis that he was denied long-term benefits. Petty also asserts a claim for the denial of short-term benefits against International Paper Company Group Health and Welfare Plan, Weekly Sickness and Accident Plan ("the S & A Plan").[1]

## I. Facts and Procedural History

On May 29, 2007, Magistrate Judge James D. Kirk issued a Report and Recommendation [Doc. No. 26] recommending that the Court find that (1) Petty's claim for short-term benefits under the S & A Plan was properly before the Court, (2) the S & A Plan Administrator abused its discretion by failing to award short-term benefits, and (3) the Retirement Plan Administrator abused its discretion by interpreting the Retirement Plan to require Petty to receive and exhaust

---

[1] The S & A Plan and the Retirement Plan will be referred to collectively as "Defendants."

short-term benefits in order to receive long-term benefits. The Magistrate Judge recommended that the case be remanded with instructions to the Administrator to calculate and award short-term benefits. The Magistrate Judge further recommended that the case be remanded, so that the Administrator can apply the definition of disability to the medical evidence and determine whether Petty is entitled to receive long-term benefits. In reaching a decision on long-term benefits, the Magistrate Judge recommended that the Administrator be permitted to obtain vocational information, if necessary, because it was unclear whether the experts in the record were qualified to render a vocational assessment.

On June 14, 2007, the Retirement Plan filed an objection [Doc. No. 27] to the Report and Recommendation.

On June 21, 2007, Petty filed a response to the objection [Doc. No. 31].

On June 29, 2007, after having conducted a de novo review of the record, the Court issued a Ruling [Doc. No. 32], declining to adopt the Magistrate Judge's Report and Recommendation in part. The Court found that neither Petty's Complaint nor his First Amended Complaint contained a claim for short-term benefits. However, the Court determined that it served the interests of justice and did not prejudice the S & A Plan or International Paper ("IP")[2] to allow Petty to file a second amended complaint specifically asserting a claim for denial of short-term benefits and naming the S & A Plan as the proper Defendant. The Court deferred consideration of the remainder of the Report and Recommendation until the amendment of pleadings and supplement briefing were complete.

---

[2] While the S & A Plan and the Retirement Plan are separate plans under ERISA, both are provided by IP to its employees, and the Plans are represented by the same counsel.

2

On July 5, 2007, Petty filed a Second Amended Complaint that expressly states a claim against the S & A Plan and names it as a Defendant in this matter. On July 13, 2007, the S & A Plan filed its Answer.

Consistent with the Court's order on supplemental briefing [Doc. No. 41], on August 14, 2007, Defendants filed a Supplemental Memorandum in Opposition to Plaintiff's Motion for Disability Benefits [Doc. No. 42].

On September 7, 2007, Petty filed a supplemental reply brief [Doc. No. 47].

Now that the amendment of the pleadings and supplemental briefing are complete, the Court has considered the remainder of the Magistrate Judge's Report and Recommendation and conducted a de novo review of the record. For the following reasons, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the Magistrate Judge's Report and Recommendation.

## II.     Law and Analysis

### A.     Objections to Factual Findings

Except as expressly provided below, the Court ADOPTS that portion of the Magistrate Judge's Report and Recommendation as to the recitation of the facts and procedural history of this case.

In the objections to the Report and Recommendation, IP contends that the Magistrate Judge erred in several of his findings of facts.

#### 1.     Role of Wausau Benefits

IP objects to the Magistrate Judge's finding that the S & A Plan was "insured by Wausau Benefits which also serves as Plan Administrator." [Doc. No. 27]. IP submitted an affidavit from

3

James Renfrow ("Renfrow"), the Manager of Benefits Programs, and a copy of the S & A Plan. Renfrow attests that Wausau Benefits was a third-party vendor retained by IP to assist in the administration of benefit plans, including the S & A and Retirement Plans. However, Renfrow attests that the S & A plan is self-funded.

The Magistrate Judge could not "determine with certainty whether Wausau is the insurer or was simply contracted to assist in the claims review process" because he had not been provided a complete copy of the S & A Plan. [Doc. No. 26, p. 2 n.1]. Given the new information provided by Defendants, the Court finds that the S & A Plan is self-funded by IP and that Wausau Benefits is a vendor which assists in the administration of the S & A Plan.[3]

## 2. Joint Reference to S & A Plan and Retirement Plan as "the Plan"

IP also objects to the Magistrate Judge's use of the terms "the Plan" to refer to the S & A Plan and the Retirement Plan. According to IP, these are separate ERISA Plans with different administrators, claims procedures, funding mechanisms, and different disability definitions. Specifically, IP points out that the S & A Plan is an ERISA welfare benefit plan, while the Retirement Plan is a pension benefit plan.

The Court finds that IP is correct and DECLINES TO ADOPT the Magistrate Judge's use of the terms "the Plan" to refer to the S & A and Retirement Plans collectively. However, the Court also finds that the Magistrate Judge specifically referred to those portions of the two different plans as necessary in his analysis. Thus, even though the Magistrate Judge improperly

---

[3]The Report and Recommendation also states that the parties stipulated that the Retirement Plan is an "employee welfare benefit plan." [Doc. No. 26, p. 4]. However, the parties stipulated that the Retirement Plan is an "employee benefit plan." [Doc. No. 18, ¶ 1]. The Retirement Plan is an employee pension benefit plan, and the S & A Plan is an employee welfare benefit plan.

4

used the term "Plan," his word usage did not affect his substantive analysis.[4] In conducting its review and consideration of this case, this Court has reviewed the S & A and Retirement Plans separately as well.

### 3. Alleged Inference Drawn from Communications between Petty and the S & A Plan and Petty and the Retirement Plan

In his recitation of the facts, the Magistrate Judge recounts that Petty was advised in February 2004 that his S & A benefits were terminated, but four days later received a letter stating that he might be eligible for Retirement Plan benefits. Although Defendants do not deny the accuracy of the chronology, they argue that the Court should not attach any significance to that chronology. In short, Defendants point out that the letter about the long-term benefits came from an administrator in Virginia in response to Petty's request for information, and the denial of S & A benefits issued from an administrator in Wisconsin.

While the Court notes Defendants' concern and has drawn no adverse inference on the basis of the chronology, the Court finds that the Magistrate Judge accurately recounted the facts and ADOPTS this portion of his Report and Recommendation.

### 4. The S & A Plan's Statement of the Definition of Disability in its February 12, 2004 Claim Denial

In its February 12, 2004 letter, the S & A Plan's Administrator stated that short term benefits "are payable through [IP's] disability plan **if you become totally disabled** . . . ." [Doc. No. 26, p. 17] (emphasis added). On the other hand, the S & A Plan states that an employee is

---

[4] In discussing whether Petty's claim for short-term benefits was properly before the Court, the Magistrate Judge states that the "Plan provides for both short-term and long-term benefits," [Doc. No. 26, p. 15], which is factually inaccurate. However, the Court declined to adopt this portion of the Report and Recommendation.

5

eligible for benefits if he becomes "**totally disabled, <u>which means you are unable to perform your job</u>** . . . ." [Doc. No. 26, p. 16] (citing AR 140) (underlining in original; boldface text added).

Defendants argue that the use of the words "totally disabled" is consistent with the Plan definition; there is no dispute that the reviewing physicians applied the proper definition; and Petty and his counsel knew the proper definition prior to the final appeal of his S & A benefits.

The Court agrees with and ADOPTS the Magistrate Judge's finding that "[i]t appears from [the S & A Plan Administrator's] letter to Petty, that, perhaps, the company applied an incorrect definition of disability to his claim." [Doc. No. 36, p. 16]. There is clearly a difference between the terms "totally disabled" without any qualification and a definition of "totally disabled" that defines the term as being unable to perform a particular job. However, the Court further finds that the Magistrate Judge put "this issue aside" in concluding "that the Administrator abused his discretion in terminating [short-term] benefits." [Doc. No. 26, p. 17]. This Court agrees that, whether or not the S & A Plan Administrator applied an incorrect definition in its letter, it abused its discretion in terminating Petty's short-term benefits.

### 5.     Reference to Social Security Administration's Finding of Disability

Defendants object that the Magistrate Judge erred by referring to the Social Security Administration's ("SSA") finding that Petty was totally disabled as of his last date of work, October 17, 2007. Defendants contend that the SSA finding is irrelevant to this ERISA claim.

The SSA determination was rendered on March 17, 2005, eight months after Petty's appeal of his S & A benefits was denied and seven months after Petty's appeal of his long term benefits was denied, and thus was not part of the administrative record. Therefore, the Fifth

6

Circuit has instructed that the Court cannot consider the SSA determination. See Horton v. Prudential Ins. Co. of America, 51 Fed. Appx. 928, 2002 WL 31415104 at *3 (5th Cir. 2002) ("The district court . . . noted that, after the administrator made its initial denial and denied Horton's appeal, the Social Security Administration determined that Horton was entitled to disability benefits under federal social security law. However, this determination was not before the administrator and the district court should have confined itself to the administrative record. The district court should limit itself to the administrative record in assessing whether a plan participant was as a factual matter disabled. . . Exceptions to this rule . . . are not relevant.").

The Court DECLINES TO ADOPT this portion of the Magistrate Judge's Report and Recommendation, but notes that the Magistrate Judge did not rely or even mention the SSA determination in his review of Petty's claims.

### B. Objections to Legal Findings

#### 1. Standard of Review

Defendants object that the Magistrate Judge improperly determined that "because the administrators of the short term plan and the long term plan are conflicted, the court will give a modicum less deference to the administrators' decisions." Defendants argue that the Magistrate Judge is incorrect both as to the Retirement Plan and the S & A Plan. The Retirement Plan's funds are paid from a trust from which neither the Plan Administrator nor the Plan Sponsor has access. The S & A Plan is self-funded, and the Administrator is an employee of IP, but Defendants cite Fifth Circuit precedent for the proposition that there is no inherent conflict of interest which requires the Court to give less deference to the Administrator's decision.

Regarding the long term benefits held in trust, Defendants cite to James v. Louisiana

7

Laborers Health & Welfare Fund, 29 F.3d 1029 (5th Cir. 1994). In that case, the Fifth Circuit stated that "[i]n situations where the administrator is acting under a possible or actual conflict of interest, that factor must also be weighed in determining whether there is an abuse of discretion." Id. at 1032 (citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). However, the James court later noted that

> under this Fund, they hold no potential for any type of pecuniary benefit by denying appellant's claim. The assets are held in trust for the sole and exclusive benefit of the Fund's participants. The only conflict the trustees have is their legally recognized dual responsibility toward both the beneficiaries and the preservation of the corpus of the trust.

Id. at 1034 n.2 (citing Brown v. Blue Cross, 898 F.2d 1556, 1567-68 (11th Cir.1990), cert. denied, 498 U.S. 1040, 111 S. Ct. 712, 112 L.Ed.2d 701 (1991) (citing De Nobel v. Vitro Corp., 885 F.2d 1180, 1191 (4th Cir.1989)).

Regarding the short-term benefits, Defendants cite to MacLachlan v. ExxonMobil Corp., 350 F.3d 472, 479 n.8 (5th Cir. 2003). In MacLachlan, the Fifth Circuit explained that courts use an abuse of discretion standard of review in ERISA cases where the administrator has been vested with discretionary authority. However, when "an administrator's decision is tainted by a conflict of interest, the court employs a 'sliding scale' to evaluate whether there was an abuse of discretion. . . This approach does not mark a change in the applicable standard, but only requires the court to reduce the amount of deference it provides to an administrator's decision." Id. at 478 (internal citations omitted) (citing Vega v. Nat'l Life Ins. Serv. Co., 188 F.3d 287, 297, 299 (5th Cir.1999) (en banc)). After concluding that the district court had correctly stated the standard of review, the MacLachlan Court, in a footnote, explained further:

> The district court assumed there is a conflict of interest because Mobil interprets and administers its own plan, leaving open the possibility that it would limit

8

> claims to reduce its liability. The court need not have made this assumption. The mere fact that benefit claims are decided by a paid human resources administrator who works for the defendant corporation does not, without more, suffice to create an inherent conflict of interest. Were that enough, there would be a near-presumption of a conflict of interest in every case in which an employer both offers a plan and pays someone to administer it, making a full application of the abuse of discretion standard the exception, not the rule.
>
> Vega did not profess to create such a presumption, and we do not read it to have created one for cases of this sort. Rather, this court's decisions, following Vega, that have found an apparent conflict of interest are ones in which a claim was denied by an insurance company that did not employ the claimant, but instead was contractually obligated to make payments under the employer's plan. See, e.g., Vega, 188 F.3d at 289; Gooden v. Provident Life & Acc. Ins. Co., 250 F.3d 329, 333 (5th Cir. 2001); Lain [v. UNUM Life Ins. Co. of Am., 279 F.3d 337, 343 (5th Cir.2002)].
>
> This is a significant distinction, because corporations that pay generous levels of benefits to their workers do so for self-interested reasons: Such benefits are one part of the total package of compensation that employers use to attract and retain capable workers. It is therefore less than patently obvious that employers would systematically benefit from a denial of meritorious claims.

Id. at 479 n. 8.

In this case, there is no doubt that the Magistrate Judge applied the correct abuse of discretion standard of review. Rather, Defendants object to any "modicum less" deference applied because of an apparent conflict of interest. As to the Retirement Plan, the Court agrees that abuse of discretion, without any modicum less deference, is the appropriate standard of review. As to the S & A Plan, given the Fifth Circuit's instruction in MacLachan, albeit in dicta, the Court also finds that abuse of discretion, without any modicum less deference, is the appropriate standard of review where, as here, there is no additional evidence of the S & A Plan's conflict.

Therefore, the Court DECLINES TO ADOPT the Magistrate Judge's recommendation that a "modicum less deference" be given to the decisions of the administrators of the Retirement

9

and S & A Plans. The Court notes that the Magistrate Judge's analysis indicates that he would have made the same recommendations if he had not given a modicum less deference to the Administrators. Nevertheless, in its de novo review, this Court has applied the abuse of discretion standard.

### 2. The S & A Plan

Defendants object that the Magistrate Judge erred in finding that the S & A Plan abused its discretion. In support of their objection, Defendants contend that the S & A Plan's denial of short-term benefits is based upon substantial evidence because independent medical reviews were performed by board-certified physicians. Defendants opine that "'the existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary.'" [Doc. No. 42, p. 18] (quoting Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001)).

Defendants are correct that a mere disagreement in medical opinion among doctors would not necessarily render the S & A Plan Administrator's decision arbitrary or capricious. However, Defendants misstate the Magistrate Judge's recommended findings. The Magistrate Judge states that the Administrator's decision is not based on substantial evidence because the reviewing physicians "based their recommendation of denial of benefits on their erroneous belief that there were no supporting diagnoses or objective findings." [Doc. No. 26, p. 21]; see also [Doc. No. 26, p. 19] (" . . . the basis for the reviewers' recommendations– that there was no supporting diagnoses or objective medical evidence–is simply wrong.").

From the Court's review of the record, and the Magistrate Judge's Report and Recommendation, and the objections thereto, the reviewing physicians failed to consider

10

information available to them and at least one reviewer did not have an accurate statement of the required functions of Petty's job. Thus, both the opinion of Dr. Cox, who is both Petty's original treating physician and IP's company physician, and that of one independent reviewer show that he was entitled to short-term benefits. In its denial of Petty's claim, the Administrator failed to even discuss the fact that its own reviewer did find Petty's torn meniscus, in and of itself, to be limiting for someone who spent an eight-hour day walking, stooping, and climbing–all of which are functions of Petty's job.[5]

Further, as Petty points out, if the S & A Plan Administrator had complied with its duty under 29 U.S.C. § 1133(2) to provide the specific grounds for its denials of S &A benefits, then Petty would have provided the S & A Plan with any additional information the reviewing physicians needed (or would have pointed out that the information was already available).

For the reasons stated in the Magistrate Judge's Report and Recommendation, ADOPTED herein, the Court finds that the S & A Plan Administrator abused its discretion by declining to award short-term benefits.

### 3. The Retirement Plan

Defendants object to the Magistrate Judge's finding that the Administrator's interpretation of the Plan's exhaustion requirement was not "legally correct" and thus an abuse of discretion.

On the issue of disability retirement benefits, the Magistrate Judge found that the Retirement Plan Administrator's interpretation was not "legally correct" and an abuse of

---

[5] As Petty points out, the S & A Plan Administrator failed to identify the specific medical reasons for its denial of benefits, citing only a lack of information. The S & Plan Administrator also failed to state what additional information was needed.

11

discretion because it required a claimant to receive short term benefits in order to receive long term benefits. See Chacko v. Sabre, Inc., 473 F.3d 604, 611 (5th Cir. 2006) ("If, on the other hand, we determine that the administrator's interpretation is not legally correct, then we must proceed to determine whether the administrator's denial of benefits was an abuse of discretion. . . . [W]e consider three factors: (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan.") (citations omitted).

First, the Magistrate Judge found the interpretation of the Retirement Plan was legally incorrect because there is no requirement that a claimant receive short-term benefits in the definition of disability. Rather, the only mention is in the definition of "Disability Retirement Date" as meaning "the first day of the month subsequent to the Participant's exhaustion of Company-paid short term disability benefits . . . ." [Doc. No. 26, p. 25].

Second, the Magistrate Judge found an abuse of discretion because, relying on this legally incorrect interpretation, the Retirement Plan Administrator never reviewed Petty's medical evidence.

The Court agrees with and ADOPTS the Magistrate Judge's analysis and conclusion. Although the Retirement Plan Administrator may have consistently interpreted the Retirement Plan, it does not follow that its interpretation is, therefore, legally correct.

### 4. Remand of Petty's Long-Term Benefits Claim

Defendants object to the Magistrate Judge's recommendation to remand Petty's long-term benefits claim for a limited review by the Retirement Plan Administrator. They contend that the Retirement Plan Administrator should be permitted to conduct a full and fair hearing.

Petty also objects to the Magistrate Judge's recommendation, contending that no remand is necessary. Petty argues that the Retirement Plan Administrator made the decision not to obtain an opinion or information on vocational rehabilitation. Therefore, the Administrator should be precluded from having a second chance to do so.

In his Report and Recommendation, the Magistrate Judge states that "[r]emand would serve no purpose as far as the determination of claimant's medical diagnoses and limitations. However, because the Administrator denied long term benefits for the procedural reason . . . there exists in the record no vocational evidence from which to determine whether claimant is totally disabled from any job for which he is qualified as required by the Plan." [Doc. No. 26, pp. 27-28]. Although there are opinions from a doctor and a nurse that he is disabled, the Magistrate Judge notes that "it is questionable whether they have the vocational training to offer such opinions." [Doc. No. 26, p. 28]. Therefore, he recommends that Petty's long-term benefits claim be remanded solely for the Administrator to make a determination whether Petty is totally disabled from any job under the medical evidence and functional capacities assessments already in the record.

Having fully reviewed the record, the Court grants Defendants' objection, denies Petty's objection, and DECLINES TO ADOPT the Magistrate Judge's recommendation for a limited remand. Because the Retirement Plan Administrator denied Petty's request for long-term benefits on purely procedural grounds, the Administrator never made a determination of whether Petty was disabled under terms of the Retirement Plan. The Court has found that the Administrator's interpretation of Plan language was legally incorrect and an abuse of discretion.

However, the Court also recognizes that the definition of "disability" or "disabled" in the

13

Retirement Plan is different from the definition in the S & A Plan. In order to receive long-term benefits, Petty must show that he has a "total disability which is a medically determinable physical or mental impairment or diagnosed terminal illness which renders the Participant incapable of performing **any occupation or employment for which the Participant is qualified** by education, training, or experience and which is likely to be permanent during the remainder of the Participant's life . . ." [Doc. No. 26, p. 24] (emphasis added).

In this case, because Petty has held the same job since 1972 and has worked for IP since 1969, it is very likely that being disabled from performing his job as a millwright also renders him disabled from performing any job for which he is qualified. Nonetheless, this matter should be remanded to the Retirement Plan Administrator, so a that a full and fair hearing may be held, and Petty may supplement with any additional medical records. The Administrator can then make a determination on the merits as to whether Petty is disabled under the Plan, and, if so, to what benefits he is entitled.

### C. Petty's Request for Attorney's Fees and Costs

In his supplemental memorandum, Petty also moves the Court to award attorney's fees and costs.

ERISA permits a federal court, in its discretion, to award reasonable attorney's fees and costs. See 29 U.S.C. § 1132(g)(1). To determine whether to award attorney's fees and costs to a party pursuant to ERISA, a court should consider the following factors:

1. The degree of the opposing party's culpability or bad faith;

2. The ability of the opposing party to satisfy an award of attorney's fees;

3. The deterrent effect of an award on other persons under similar

>   circumstances;
>
> 4. Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and
>
> 5. The relative merits of the parties' positions.

Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir.1980); see also Lain v. Unum Life Ins. Co. of Am., 279 F.3d 337, 347-48 (5th Cir. 2002) (quoting same).

Upon consideration of these factors, the Court concludes that Petty is entitled to attorney's fees and costs. Lain, 279 F.3d at 348 ("This Court has held that a district court may award attorneys' fees upon finding an abuse of discretion on the part of an administrator in denying benefits.") (citing Vega, 188 F.3d at 302).

The Court hereby refers this matter to the Magistrate Judge for a report and recommendation on the appropriate amount of attorney's fees to be awarded under a lodestar analysis. See id.

## III.   Conclusion

For the reasons set forth above, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the Magistrate Judge's Report and Recommendation.

The Court finds that the S & A Plan Administrator abused its discretion by failing to award short-term benefits and that the Retirement Plan Administrator abused its discretion by interpreting the Retirement Plan to require Petty to receive and exhaust short-term benefits in order to receive long-term benefits. The case is remanded to the S & A Plan for the Administrator to calculate and award short-term benefits.

Once the S & A Plan has completed its calculation and award, the case is further

remanded to the Retirement Plan for a full hearing on the long-term benefits claim.

Finally, the Court awards attorney's fees and costs to Petty. This case is referred to the Magistrate Judge for a report and recommendation on the appropriate amount of attorney's fees to be awarded under a lodestar analysis.

MONROE, LOUISIANA this 15 day of October, 2007.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE